Ms. Gracia? Yes, Your Honors. Good morning. May it please the Court. My name is Catalina Gracia and I represent the petitioner, Jaime Ugaldi-Varron. At this time, I would like to reserve two minutes for rebuttal. Your Honors, one issue here is whether the petitioner was prejudiced by the government's noncompliance in the issuance of its final administrative removal order. Mr. Ugaldi-Varron was in fact prejudiced by this noncompliance and he was harmed. He suffered a removal from the United States without the opportunity to address or confer with counsel prior to the issuance of the final administrative removal order. This also deprived the petitioner of an opportunity for judicial review. The entry of the final administrative removal order was fundamentally unfair and caused permanent harm that only this Court can remedy. Tell us how he was prejudiced. The government's argument is even though there was a regulatory violation, he wasn't prejudiced because he was removable for having committed an aggravated offense. Tell us how you think he was prejudiced. Well, he was deprived of the right to present evidence to rebut those charges of removability. Okay, I understand. But the government, this is a legal issue. The question is whether the previous conviction just made him removable. Yes, so the question is why, had he had the opportunity to argue and present evidence, what would he have argued? Your Honor, in this situation, he would have argued that the conviction, the California conviction that he suffered was not an aggravated felony under the federal statute. In Verdugo, I believe it's a Southern District case of California, that court held that the California statute for methamphetamine did not fall under the federal statute for methamphetamine because of the two-prong requirement in the federal statute, whereas California only has one-prong requirement to make the requisite finding that the controlled substance falls within the aggravated felony category. Does your argument depend on us finding that the California statutory scheme is not divisible? In part, yes, Your Honor. Well, in total, right? Because if it is divisible and your client was convicted of a methamphetamine offense as opposed to an analog defense, then all the documents would suggest this is a methamphetamine offense, which would be a match for the federal statute, right? Correct, Your Honor, yes. So your argument turns on whether the statute is divisible or not Yes, Your Honor. So here's what I need. Thank you. This is a long way of getting to the question I really wanted to ask. So hypothetically, if I believe it's an aggravated felony, which I'm saying this hypothetically, then he wouldn't be able to show any prejudice because he would lose no matter what, because that's a matter of law, right? When we're looking at just that part of the prejudice, he was prejudiced in more than one way. His due process rights were violated. Well, okay. So he's in Mexico right now. Okay. So he's been removed. And I like to think of kind of take myself down the line. Let's say hypothetically, we grant your petition. All right. How is he going to come back? He has no legal status. Your Honor, that's correct. He has no legal status, but he does have a pending stay of removal that was filed prior to him physically being removed from the United States. And that's still being litigated. That stay of removal has not been ruled on. There's no decision made on that. And while he doesn't have legal status, he did have a legal entry into the United States as an agricultural worker. So he has the requisite legal entry to adjust to his U.S. citizen child. So he does have available relief if he were to be in the United States. The only thing that is preventing if it was granted, then he still would have to be able to show that he could get back in, right? Yes. Yes. If he would plan to adjust in the United States. But if this... But why would they let him back in if he has an aggravated felony? Because he no longer has an aggravated felony, Your Honor. Well, that's an issue that would have to be litigated, right? Because he vacated it how years later? He vacated it this 2024, and the conviction was in 1998. I want to go back to Judge Callahan's question before I ask you the one I wanted to. You're not contending that your client has any legal status in the United States, are you? No, he presently does not. No. So if he were charged with removability tomorrow, it seems to me you'd have to concede removability. You might make arguments about asylum, or CAD, or withholding, or ask for a stay while you apply for status. But he would be removable, would he not? Yes, but he would have the opportunity to adjudicate that before an immigration... Well, but he'd have the opportunity to adjudicate it. But I'm asking you, he is removable, is he not? He has no legal status in the United States. Your Honor, he's removable, but not as charged. I understand. I understand. Now, well, let me get back to as charged. And this is the question I wanted to ask you before. The statute prohibits possession of methamphetamine in one section, and there's another section that speaks about analogs. And the California Supreme Court has now made it pretty clear that the kind of proof one has to put in to prove analogs is different than the proof one has to put in to prove possession of methamphetamine. So given that, why isn't the statute divisible between analogs and methamphetamine? Your Honor, I believe the use of what the drug can be used for, whether it's going to be a mind-altering substance that a human can use, that was my understanding of the finding in Verdugo. Well, I understand what Verdugo said. I'm trying to figure out whether Verdugo is right. And so I'm asking you, why, because the analog prohibition is in a different section than the methamphetamine prohibition, why we shouldn't view the statute as divisible? Your Honor, I believe because it's overbroad. Well, except Verdugo is your best case, which isn't binding on us, correct? Correct. Yes, Your Honor. And in Verdugo, it was not clear from the charging document whether the defendant was charged with a violation involving methamphetamine or an analog. Here, it's clear that your client was charged, the charging document says methamphetamine. Yes, but because the case is so dated, we don't have information about what in fact was tested and what type of methamphetamine this was and whether it was... Well, anyone that's looked at a charging document, it's to put people on notice. And I would suspect that if you charge someone with methamphetamine, then you prove that it was methamphetamine. If you charge that it was an analog, then you prove that it was an analog. Here, I mean, he was on notice that it was methamphetamine, which is in fact an aggravated felony. So I guess I'm just not seeing how you can win. I'm just trying to be honest about this. Well, the case was vacated because the case file was destroyed. So we never will know what exactly was contained in the substance that was found on the petitioner. We only know that he accepted a plea, whether or not the substance was actually proven up or he just took advantage of the plea because he didn't understand what the consequences were going to be. We'll ask you a question about the vacatur. You could move to reopen, could you not, with the BIA and argue that this vacation of the conviction is a new fact that ought to be taken into account? Your Honor, we were never before the BIA because of the issuance of the final administrative order. Now, you have a final administrative order. You could move to reopen it, can you not, and argue that the conviction has now been vacated? We could. Arguably, we could do that. Yeah. Here's my difficulty with the vacation of the conviction. We can't, even if we take judicial notice of it, which I think we can, I don't think we can find that the agency erred on the basis of that were not before it. But I think you should try to get that fact before the agency. So I'm suggesting that one way to do so is in a motion to reopen. I know you haven't filed one and you don't have to take my advice. I'm just raising that for you. Well, I just have a question about the vacatur and you just said it was vacated because the files were lost. But I understood from the briefs that it was vacated because he wasn't advised of the immigration consequences of his plea. Your Honor, the case was vacated because the government couldn't prove that he was advised of the immigration consequences of his plea because they couldn't proceed, they did not have their file. So yes, that was the reason for filing to vacate this conviction and that was the basis for the grant. But the reason the government couldn't proceed was because they didn't have their file. All right. You asked for two minutes to reserve your time, but I will give you a minute at the end of the government's argument. Thank you, Your Honor. Thank you. Ms. Vick? Good morning. Good morning. Lindsay Vick on behalf of the government. This case presents the court with two questions, as you've already acknowledged, whether Petitioner has a statute of conviction that is an aggravated felony and whether he was removed lawfully. And first, regarding the aggravated felony conviction, Your Honors are correct that the statute, the controlled substance element is divisible. And that is because of this court's well-established precedent, as well as the fact that Petitioner's arguments concerning U.S. v. Verdugo are inapposite. Well, stop for a second. I want to understand the government's position on categorical. You seem to concede or not contest that the analog definition in the California statute is broader than the federal analog definition, correct? Correct. We're not conceding. You're not contesting that? Correct. Well, we're not conceding one way or the other whether California is overbroad or not. Well, now, do we have to decide that? I don't think you do, because it's clear from California state law, basically people v. Davis and the California jury instructions, that the state has to prove either a controlled substance listed, which would add to our federal analog. So then you're asking us to assume that it's broader, but find that it's divisible? Because if it's not broader, we don't have to worry about divisibility, do we? Correct. Correct. So... You're not contesting that in this case that the California definition is broader? That's correct. Because I know some circuits have decided that it's in the disjunctive? The or? Partially conjunctive, I think. Yeah. Partially conjunctive. That it's in the conjunctive, the federal one, but you're not contesting that today? No, we're not. And I don't believe the Ninth Circuit, I don't believe this court... Has ever addressed it? Addressed it. But it is certainly divisible. And again, that is because people v Davis said clearly that the state must prove an unlisted substance is an analog, or it proves that the substance is a listed substance. Well, if you were trying the case, but he pled guilty or no contest or something, right? He didn't have a jury trial. Correct. But the charging document said methamphetamine. That's correct. And we know that. We know that. So what would a prosecutor have to say if it was an analog? They wouldn't say methamphetamine, would they? They would say he was charged with an analog, right? Correct. They would say whatever the name of the substance. I think a lot of the cases deal with ecstasy. And so they'll name the substance and then they have to call an expert or chemists. Well, and if you were charging someone with ecstasy, say, and you put methamphetamine on there, the defense would have a complaint against you for not putting on notice as to what the evidence was going to be, right? And that would be a due process challenge. And that is something that's addressed in people v Becker. However, that doesn't relate to then what needs to be proven as an element at trial. And what we're talking about here is what needs to be proven as an element at trial. Well, if it is an aggravated, assume that, let's just hypothetically assume that it's, that I believe it's an aggravated felony. What relief can he get here? He's in Mexico right now, right? So we were questioning your friend on the other side. It would seem to me, how does he get back here? Well, Your Honor, I don't believe he has any eligibility to come back because I know my friend on the other side... She said a lot of ifs. She said, well, then he could do this and then he could do that. But presently, does he have any way to get back? Not at this very moment. And one thing I'd like to... In some circumstances, the government would facilitate his return for purposes of having a proceeding which met the due process requirements. Is this such an instance? This is not such an instance because there actually is no evidence that he was ever in lawful status. But he hasn't been charged. He wasn't charged as being removable because he was here unlawfully. He was charged as being removable because he committed an aggravated felony. We can sort of piece together from the record that he may not have been here legally, but that's not the basis on which he was removed.  So let me ask the question this way. Our case law on due process says when a regulatory violation potentially deprives someone of an ability to pose a defense, we find a due process violation. What strikes me about this case is both sides have skipped past the potentially and are arguing the merits of the alleged defense. The government caused this problem by its regulatory violation. Why shouldn't we... Whichever way we lean on the divisibility question, given that there's two district court opinions the other way, it's not a frivolous defense. Why shouldn't we just let you fix the problem you caused? Send it back. Let him raise this defense. We have no ruling from the agency about whether or not this is a divisible statute or not. Comes to us in the first instance. He can argue his vacatur and you can proceed from there. Why isn't that the appropriate solution in this case? I don't think that's the appropriate solution because there was a lawful removal here. That is because there is the 10-day notice that he was not provided, but he still has to prove prejudice. That means he would have to prove... We have to prove potential prejudice according to our cases. If we think it's mildly a close question, isn't that potential prejudice? I don't think it is because those 10 days... Please tell us what you think the prejudice or why there's not prejudice. I don't think there's prejudice because those 10 days did not impact his ability to obtain counsel for the subsequent reasonable fear proceedings. Then he had counsel for many months and he didn't file a motion to vacate until I think about seven months later. And then he didn't obtain the vacatur until maybe 10 months later. We have to remember this is someone who was in the country for maybe almost 40 years, had an over 20-year conviction. He never sought to regularize his status or do anything about the conviction. Could he have raised the... Let me just call it the divisibility argument. This is not an aggravated felony argument in the agency after the final order of removal? There's no administrative... So when he was removed two days into the 10-day period, he then lost his ability to argue that this is not in front of the agency, that this is not an aggravated felony, right? Well, he wasn't removed during the 10-day period. I mean, when the order came out two days in. Yeah. Well, yes. The administrative removal order and the notice of intent were... That was the final order? Yes. And could he... Well, it was actually final once the immigration judge affirmed the reasonable fear. That's what I was trying to figure out here, so thank you. There's a longer period between the removal order and the reasonable fear determination, and after the reasonable fear determination gets affirmed, that's when he's actually removed. Correct. So I'm trying to figure out whether or not during that extended period, much longer than 10 days, he could have raised the argument that this is not an aggravated felony, or whether or not he was barred from doing so by the removal order. I don't know that he's barred from doing so, and I don't know that he would have been barred from going to ICE for prosecutorial discretion or anything like that. Well, I'm putting it at prosecutorial discretion. The argument that they're making in this case is that he was deprived of the ability to argue this is not an aggravated felony because the order issued prematurely, if you will. But he wasn't removed until three weeks, four weeks, I don't know what the number is, a much longer period of time than 10 days. So what I'm trying to figure out is whether, had he wanted to raise this issue within that 10-day period, because he did have counsel for the reasonable fear determination, whether he could have raised that somehow in the agency. If so, then it's hard to see how the order prejudiced him because he had time to raise it and didn't.  But that's why I'm asking the question. I don't know that there is that method, and that is because this is expedited removal, and it's the intent of Congress that these proceedings be summary and expeditious, and that there is finality, and that's just the nature of his removal statute. In this case, he had filed a PFR and stay motion at 2.55 p.m., and he was deported at 3.17 that same day. So there wasn't even a chance to... So we attached a declaration to our stay op that shows the process. So he was actually, the ICE officer was checking the databases for alerts, and if a PFR had been filed the day the immigration judge affirmed the reasonable fear finding, that was November... I'm sorry, September 22nd. And then on September 25th, when they were going to execute the order, he was boarded a bus at 10 a.m., and the ICE agent checked the databases, saw no alerts. And then I believe he was en route by noon, and then the ICE agent checked again, saw nothing. And then it was at 2.55 that day that the PFR and stay were filed, and then at 3.17 is when he actually exited the bus and was removed. Judge Wardle, can I ask you a question? Go ahead. I'm still interested in this timing issue, and I want to make sure I understand it. The order of removal issues the second day, basically, the second day of 10. And then there's a process under which he undergoes a credible fear interview, and eventually the I.J. reviews that. Could he have argued to the I.J. that, gee, now my lawyer is here, and I don't think this is an aggravated felony, or is the I.J. prevented from addressing that issue because his or her jurisdiction is limited to the reasonable, credible fear? I think they're limited to the reasonable fear proceedings, but I would have to go back. Okay. Could somebody have filed a motion to reopen during that period before removal? That said, oh my gosh, now that my lawyer is here, this isn't an aggravated felony. I'm not aware of a process. Neither am I. I mean, I'm not... That's why I'm asking you. Yeah, I'm not aware that anything would necessarily prevent them from doing that, but I'm not aware of a process for that. And again, it's because of the intended expeditious nature of these proceedings. All right, counsel. You're two minutes over. Ms. Graucia, I'll give you a minute to respond. Perhaps you can answer Judge Hurwitz's questions. Thank you. And yes, Your Honor, the immigration judge is not permitted or does not have the authority to address any issue other than the credible fear determination. The scope is limited to just that purpose. Petitioner would not have had the opportunity to bring up any issue related to his prior conviction. The other consequence of issuing a final administrative removal order is that it does not permit the BIA to review. BIA does not have jurisdiction. If something were to be filed with the BIA, they would reject the motion to reopen based on lack of jurisdiction. And that's part of the prejudice here, is that the FARO significantly limits the options for petitioner to address or attempt to remedy the due process violation. And specifically, 8 U.S.C. 1228, subsection B, subsection 3, says that only DHS can reopen a final administrative removal order. So that means that the only way to obtain any kind of relief is going- You could have gone to DHS during that period. And now, it's a little strange, because nobody thought about the divisibility issue until Verdugo. So it was later, but had somebody thought about it at the time, they could have gone to DHS and said, wait a minute, you made a mistake. This is not an aggravated felony. I think that's the purpose of the state. That was the opportunity to file that. I think trying to file something with DHS, the problem there would have been that by the time somebody looked at it, he would have been long gone. Well, I've read the stay application. That's not really what it says, is it? The stay is just to stop the actual physical removal of the petitioner, so that then we could have pursued or attempted to pursue, perhaps, a motion with DHS or something alternative. But in this situation, the petitioner was barred from doing that because he was- Isn't it kind of moot at this point? He's gone. It's not moot because this court does have the authority to demand that petitioner be brought back to the United States. He does have the opportunity to adjust. He does have a legal entry. He does have that conviction that's now been vacated, and he does have a U.S. citizen child. He's ripe for adjustment. There'd be nothing that would stop him from obtaining his green card status at this point. It's just a matter of going through the motions and filing the proper paperwork. I want you to clarify something. Did you say he did have lawful status when he originally entered, that under the agricultural workers? Yes. I don't know if I would call it lawful status, but he entered as a special agricultural worker, so he was here present with that lawful status. Did the record seem to indicate that he entered, then applied for status as an agricultural worker, which was denied? Am I incorrect in reading the record that way? Your Honor, I think what occurred was he did enter as a special agricultural worker, and then he attempted to adjust, I believe on two or three occasions, as a special agricultural worker, and the adjustment is what was denied. And I think the basis for that was that he couldn't establish, or he didn't have the proper identity document showing that he had entered as a special agricultural worker. So the denial was not based on him not being a special agricultural worker, but rather that at the time of the attempted adjustment, he didn't have the necessary documents. Well, but then that doesn't give him, that's kind of a distinction without a difference here, that he didn't have lawful status. He doesn't, he did have lawful status. Have the documents. Yes, but because of, he doesn't need lawful status to apply for an adjustment. He just needs to have had a legal entry, which he does have. So correct, he has no lawful status. Obviously, he's in Mexico, but in order to adjust, he needs to have had a legal entry into the United States, which he does have that. All right. Thank you, Council. Thank you, Your Honor. Barron v. McHenry will be submitted.
judges: WARDLAW, CALLAHAN, HURWITZ